1

2

3

4

5

6

7

8                  UNITED STATES DISTRICT COURT

9                 EASTERN DISTRICT OF CALIFORNIA

10

11  WAVERLY WALTON, SR.,              2:05-cv-1737-MCE-PAN
    individually and as
12  successor in interest to
    FRED WALTON, deceased,
13
              Plaintiff,
14
         v.                          ORDER
15
    CHANNEL STAR EXCURSIONS, INC.
16  AND BRIAN GERHART,
    individually and as principal
17  of CHANNEL STAR EXCURSIONS and
    DOES One through One Hundred,
18  Inclusive,

19            Defendants.

20                     ----oo0oo----

21

22      In this action, the children and heirs of Plaintiff Waverly

23  Walton, Sr. ("Heirs") have moved the Court to substitute

24  themselves as party plaintiffs in place of their now deceased

25  father, Mr. Walton ("Plaintiff").[1]  Fed. R. Civ. Proc. 25(a).

26  _____

27      [1]Because oral argument will not be of material assistance,
    the Court orders this matter submitted on the briefs.  E.D. Cal.
28                                              (continued...)

                            1

1  Channel Star Excursions, Inc. and Brian Gerhart ("Defendants")

2  oppose the Motion to Substitute on the following grounds: 1) this

3  cause of action[2] does not survive the death of the original

4  Plaintiff, Waverly Walton; 2) the Heirs are not the proper

5  parties for substitution; and 3) the evidence on the record

6  failed to properly identify the Heirs.  For the reasons set forth

7  below, finds substitution to be proper and, hereby, GRANTS the

8  Motion to Substitute.

9

10                          **BACKGROUND**

11

12      On or about August 27, 2004, Fred Walton ("Decedent")

13  perished after falling into the Sacramento River while attempting

14  to board the river boat Matthew McKinley by way of a gangplank

15  affixed between the boat and the dock.  Defendants owned and

16  operated the Matthew McKinley on the date of the accident and

17  were responsible for the safe passage of patrons from the dock to

18  the boat.  Nearly a year after the accident, the Decedent's

19  father, Plaintiff Waverly Walton, filed the present action

20  seeking compensation for the Decedent's wrongful death.  Nine

21  days after filing this action, Plaintiff died.

22

23  _____

24      [1](...continued)
    Local Rule 78-230(h).

25      [2]The Court has construed the underlying Complaint as having
    stated claims for wrongful death and survival arising from the
26  death of Plaintiff's son, Fred Walton.  The Complaint provides
    that Waverly Walton, Senior, is suing Defendants in "his
27  individual capacity" and as "the successor in interest" of his
    son, Fred Walton.  Pl.'s Compl. ("Complaint"), filed Aug. 26,
28  2005, para. 1.

1  On October 20, 2006, Defendants filed a Notice of Suggestion of

2  Death Upon the Record pursuant to Federal Rule of Civil Procedure

3  25(a)(2).[3]  Presently before the Court is the Heir's Motion to

4  Substitute parties pursuant to Rule 25(a).

5

6  **STANDARD**

7

8  **1.   Subject Matter Jurisdiction**

9

10  Federal courts are presumptively without jurisdiction over

11  civil actions, and the burden of establishing the contrary rests

12  upon the party asserting jurisdiction.  *Kokkonen v. Guardian Life*

13  *Ins. Co. of Am.*, 511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391

14  (1994).  Lack of subject matter jurisdiction is never waived and

15  may be raised by either party or the court at any time. *Attorneys*

16  *Trust v. Videotape Computer Prods., Inc.*, 93 F.3d. 593, 594-95

17  (9th Cir. 1996).  Lack of subject matter jurisdiction may be

18  raised by the district court *sua sponte*: "Nothing is to be more

19  jealously guarded by a court than its jurisdiction."  *In re*

20  *Mooney*, 841 F.2d. 1003, 1006 (9th Cir. 1988).

21  If the motion constitutes a facial attack, the court must

22  consider the factual allegations of the complaint to be true.

23  *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. 1981).

24  *///*

25  *///*

26  *///*

27

28  ³All references to the "Rules" hereinafter shall mean the
Federal Rules of Civil Procedure.

1 If the motion constitutes a factual attack, however, "no

2 presumptive truthfulness attaches to plaintiff's allegations, and

3 the existence of disputed material facts will not preclude the

4 trial court from evaluating for itself the merits of

5 jurisdictional claims."  *Thornhill Publ'g Co. v. Gen. Tel. &*

6 *Elect. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).

7

8 **2.    Federal Rule of Civil Procedure 25**

9

10    Rule 25(a)(1) provides that if "a party dies and the claim

11 is not thereby extinguished, the court may order substitution of

12 the proper parties."  Fed. R. Civ. P. 25(a)(1).   Therefore,

13 before a party can substitute a new party pursuant to Rule

14 25(a)(1), the Court must establish that the substantive law

15 controlling the suit permits survival of the cause of action.   If

16 the cause of action does not survive the death of a party, there

17 can be no substitution.

18

19                              **ANALYSIS**

20

21 **I.   Admiralty Jurisdiction**.

22

23    Plaintiff bases this Court's jurisdiction in admiralty

24 pursuant to 46 U.S.C. § 740 (current version at 46 U.S.C.S. §

25 30101 (2006)).  Although Defendants did not raise the question of

26 our jurisdiction, we have raised it, as we must.  *WMX Techs. v.*

27 *Miller*, 104 F.3d 1133, 1135 (9th Cir. 1997); (citing *Mackay v.*

28 *Pfeil*, 827 F.2d 540, 542-43 (9th Cir. 1987).

1    The United States Supreme Court requires a party seeking to

2 invoke admiralty jurisdiction pursuant to 28 U.S.C. § 1333(1)

3 over a tort claim to satisfy conditions both of location and

4 connection with maritime activity ("*Grubart Test*").  *Jerome B.*

5 *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534

6 (1995).  In order to satisfy the location test, a party must

7 establish that the tort occurred on navigable water or that a

8 vessel on navigable water caused the injury if the party suffered

9 the injury on land.  *Id.*  The connection test raises two issues.

10 First, a court must determine that the incident giving rise to

11 the action has a potentially disruptive impact on maritime

12 commerce.  *Id.; Sisson v. Ruby*, 497 U.S. 358, 362 (1990)

13 (jurisdiction over tort cases depends on whether the incident has

14 "a potentially disruptive impact on maritime commerce").  Second,

15 a court must determine that the general character of the activity

16 giving rise to the incident bears a substantial relationship to

17 traditional maritime activity.  *Id.*

18

19    **A.    Location test.**

20

21    Rivers are public navigable waterways if they are used or

22 suspected of being used in their ordinary condition as highways

23 for commerce over which trade and travel can be conducted.  46

24 U.S.C. § 30101. The Ninth Circuit holds that the location or

25 "situs" test is satisfied when the injury occurs on or over

26 navigable waters.  *Taghadomi v. United States*, 401 F.3d. 1080

27 (9th Cir. 2005).

28 ///

1 Fred Walton suffered his injury in the Sacramento River, a
2 navigable waterway, where he drowned.  Therefore, the location
3 test is satisfied in this case.

4

5    **B.    Connection test.**

6

7        **1.    Potential Disruption of Maritime Commerce**

8

9        The interest giving rise to maritime jurisdiction is the
10 protection of maritime commerce.  *Foremost Ins. Co. v.*
11 *Richardson*, 457 U.S. 668, 675 (1982).  This interest is protected
12 when "all operators of vessels on navigable waters are subject to
13 uniform rules of conduct."  *Id.*  This prong of the test does not
14 require that the activity be commercial.  *Id.*
15        The United States Supreme Court and the Ninth Circuit have
16 addressed the potential disruption of maritime commerce in
17 various situations involving injury on or in navigable waters.
18 The Supreme Court has held that a fire aboard a ship that damaged
19 a dock and could have damaged nearby ships was sufficient to
20 satisfy this condition under the *Grubart Test* because damage to
21 ships and docks could disrupt maritime shipping and navigation.
22 *Sisson v. Ruby*, 497 U.S. 358, 362 (1990).  Conversely, the Ninth
23 Circuit has held that admiralty jurisdiction was not satisfied
24 when woman fell from a defective ladder and was injured because
25 there could have been no affect to any person or thing outside
26 the ship, and therefore could not affect maritime commerce.  *Peru*
27 *v. USS Mo. Mem'l Ass'n*, 2006 U.S. App. LEXIS 28859 (9th Cir.
28 2006).

1  Similarly, the Ninth Circuit has held that an internal carbon

2  monoxide incident occurring within a ship could not disrupt

3  maritime commerce.  *H2O Houseboat Vacations Inc. v. Hernandez*,

4  103 F.3d 914, 916-17 (9th Cir. 1996).  The Ninth Circuit has

5  held, however, that a United States Coast Guard rescue operation

6  to recover victims thrown from a kayak by rough seas could

7  disrupt maritime commerce.  *Taghadomi v. United States*, 401 F.3d

8  1080, 1086 (9th Cir. 2005).

9     This Court must evaluate the actions of the alleged

10 tortfeasor, not the injured party, in order to properly assess

11 the potential for disruption of maritime commerce.  *Taghadomi*,

12 401 F.3d. 1080 at 1087.  The general activity in this case is the

13 organization and the carrying out of a cruise for entertainment

14 purposes.  More precisely, the activity included providing safe

15 passage from to and from the ship via a gangplank, and the

16 performance of rescue efforts conducted upon the Decedent's

17 falling into the Sacramento River.

18    To the extent this case encompasses the traverse of

19 passengers to and from a boat, that certainly impacts maritime

20 commerce as it is a central part of maritime activity.

21 Similarly, the transport of passengers along a navigable waterway

22 whether for entertainment purposes or not, likewise impacts

23 maritime commerce.  Furthermore, faulty rescue efforts conducted

24 to retrieve a drowning passenger has the potential to disrupt

25 maritime commerce.  *Id.*  Accordingly, the Court finds this prong

26 of the connection test is satisfied.

27 ///

28 ///

1                    **2.    Traditional maritime activity**.

2

3        According to the Ninth Circuit, as long as a potential

4   tortfeasor "was engaged in traditional maritime activity [,] the

5   allegedly wrongful activity will 'involve' such traditional

6   maritime activity" and satisfy this condition.  *Id*.  Plaintiff

7   originally claimed Defendants conducted the cruise negligently

8   and are the proximate cause of the Decedent's passing.  The

9   alleged wrongful activity involves the securing of a gangway and

10  the transport of patrons along a navigable waterway, which is

11  clearly a traditional maritime activity.  Therefore, the Court

12  finds this condition easily met.

13       Given that the Court has found both location and maritime

14  activity under the facts presented by this case, the Court also

15  finds that federal subject matter jurisdiction in this matter

16  exists.

17

18  **II.   Survivability and Substitution of Parties**

19

20       Rule 25(a)(1) states that if "a party dies and the claims

21  [are] not thereby extinguished, the court may order substitution

22  of the proper parties."  Fed. R. Civ. P. 25(a)(1).  The foregoing

23  Rule raises three issues in the present action.  The first is

24  whether a survival action under maritime law survives the death

25  of the Plaintiff, Waverly Walton.  The second is whether the

26  action for wrongful death under maritime law survives the death

27  of the Plaintiff.

28  ///

1 And finally, the third is whether the parties to be substituted

2 in the survival and wrongful death actions are proper.  Each

3 issue shall be taken in turn below.

4

5      **A.   Survivability of Survival Claim.**

6

7      The Defendants argue that the survival claim in this action

8 cannot proceed as it does not survive the death of Plaintiff

9 Waverly Walton.  In order to assess the merits of Defendants'

10 position, the Court must first determine whether maritime or

11 state law gives rise to Plaintiff's survival claim and whether,

12 under that body of law, this claim can survive the Plaintiff's

13 death.

14      The Ninth Circuit recognized a general maritime survival

15 action in *Evich v. Connelly*, 759 F.2d 1432, 1434 (9th Cir. 1985).

16 Although the United States Supreme Court overruled that case, the

17 Ninth Circuit nonetheless has held that *Evich*, for the purpose of

18 bringing a survival action, remains good law.  *Miles*, 498 U.S. 19

19 (1990); *Sutton*, 26 F.3d 903.  Although it is clear a maritime

20 action under maritime law does not survive the death of the

21 Plaintiff, the Court has held that Congress and state statutes,

22 where applicable, preserve a cause of action that would not

23 otherwise survive.  45 U.S.C. § 59; *Gillespie*, 379 U.S. 148;

24 *Miles*, 498 U.S. at 33.  The incident giving rise to this cause of

25 action occurred in the territorial waters of California.

26 Therefore, this Court must look to California law to determine

27 the survivability of the underlying survival claim.

28 ///

1    The California survival statute states that a "cause of
2  action for or against a person is not lost by reason of the
3  person's death, but survives ..."  Cal. Code Civ. Proc. § 377.20.
4  Consequently, this Court holds that the present survival action
5  on behalf of the Decedent and brought by the Plaintiff survives
6  and may be maintained by a proper party.   45 U.S.C. § 59;
7  *Gillespie*, 379 U.S. 148; *Miles*, 498 U.S. 19 at 33; S*utton*, 26
8  F.3d 903 at 919; Cal. Code Civ. Proc. § 377.20.
9
10    **B.    Survivability of Wrongful Death Claim**
11
12    Like the foregoing argument, Defendants contend Plaintiff's
13  wrongful death claim may not proceed as it does not survive.
14  Again, the Court must first ascertain the body of law, maritime
15  or state, that governs this action to determine whether this
16  wrongful death claim survives the death of the Plaintiff.
17    With respect to wrongful death, the Supreme Court has held
18  that there is no general provision under maritime law, however,
19  "admiralty accommodation of state remedial statutes ... is
20  constitutionally permissible."  *Norfolk Shipbuilding & Drydock*
21  *Corp. v. Garris*, 532 U.S. 811, 815 (2001) (issue of state
22  remedial measure not addressed because petitioner sought remedies
23  only under federal law).  The Supreme Court has likewise held
24  that state remedies have been applied in accident cases maritime
25  wrongful death cases in which no federal statute specifies the
26  appropriate relief and the decedent was not engaged in maritime
27  trade.  *Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 202
28  (1996).

1  The Death on the High Seas Act ("Jones Act") does not apply to

2  accidents occurring on rivers, therefore federal law does not

3  preempt in the present case and state law, in fact, does apply.

4  46 U.S.C. § 688 (current version 46 U.S.C. § 30104); Cal. Code

5  Civ. Proc. § 377.61.

6      While Plaintiff's counsel incorrectly identified California

7  Code of Civil Procedure Section 377 as authority for wrongful

8  death actions under California law, it is Section 376 that

9  governs the issue.  Specifically, Section 376 authorizes parents

10 to assert a cause of action for wrongful death for the wrongful

11 act or negligence causing the death of the parent's child

12 provided the child is a minor.  In light of the Court's

13 conclusion that California law should govern this question, this

14 Court necessarily finds that the California survival statute is

15 controlling in determining whether the present action survives

16 the death of Plaintiff, Waverly Walton.  The statute provides

17 that a "cause of action for or against a person is not lost by

18 reason of the person's death, but survives ..."  Cal. Code Civ.

19 Proc. § 377.20.  Consequently, it is clear that the present cause

20 of action survives the death of Plaintiff Waverly Walton and can

21 be maintained by a proper party.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

11

1    **C.    Proper Substitution**

2

3    Defendants contend that the Heirs are not proper parties for

4  substitution under Rule 25 given Plaintiff's counsel's failure to

5  assure the Court they are, in fact, Plaintiff's heirs. In

6  response to the foregoing, Plaintiff's counsel provided the Court

7  with a Declaration asserting that, in fact, the Heirs are the

8  beneficiaries to Plaintiff's estate.

9    California law states that, "'decedent's successor in

10 interest' means the beneficiary of the decedent's estate or other

11 successor in interest who succeeds to a cause of action ... that

12 is the subject of a cause of action."  Cal. Code Civ. Proc. §

13 377.11.  In Plaintiff's Reply and Declaration, Plaintiff's assert

14 that the children of Waverly Walton, (Waverly, Iris, Sharon,

15 Wanda, Jerry, and Tammy) are the successors in interest to

16 Waverly Walton and beneficiaries to his estate.  *See* Doc. No. 34,

17 January 4, 2007.  Furthermore, the Heirs assert that no other

18 person has a superior right to commence the action or proceeding

19 or to be substituted for Plaintiff in the pending action or

20 proceeding.  *Id.*

21   Because the present action survives the death of Plaintiff

22 Waverly Walton, and because the parties are proper parties to be

23 substituted, the Court finds substitution of the Heirs in place

24 of Plaintiff to be proper.  Fed. Rule Civ. P. 25(a)(1);

25 *Gillespie*, 379 U.S. 148; *Miles*, 498 U.S. 19 at 33; S*utton*, 26

26 F.3d 903 at 919; Cal. Code Civ. Proc. § 377.20; Cal. Code Civ.

27 Proc. § 376.

28 ///

12

**III. Identity of parties to be substituted**

Defendant's contend that the Heirs are not properly identified in the record and, therefore, may not be substituted. The Court is satisfied that the Declaration and Plaintiff's Reply establish that Waverly Walton is deceased, and that his children, (Waverly, Iris, Sharon, Wanda, Jerry, and Tammy) are the beneficiaries of his estate.

**CONCLUSION**

The Court finds it may properly maintain jurisdiction over this action as maritime jurisdiction exists. In addition, the Court finds that both claims survive the death of the original Plaintiff, Waverly Walton. The Court further finds that the Heirs have properly established themselves as successors in interest to Waverly Walton's estate. Therefore, the Heirs are hereby substituted as Plaintiffs in this proceeding.

IT IS SO ORDERED.

Dated: March 8, 2007

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

13